UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,
v.                                       Case No. 96-80335
                                        Honorable Victoria A. Roberts

CARLOS HICKS,

    Defendant.
_____/

## CORRECTED ORDER DENYING DEFENDANT'S RENEWED MOTION FOR COMPASSIONATE RELEASE [ECF No. 133]

### I.   INTRODUCTION

This matter is before the Court on Carlos Hicks' ("Hicks") Renewed Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). He asks the Court to place him on home confinement for the duration of his sentence because of underlying health conditions that place him at greater risk of severe illness if he contracted COVID-19.

After oral arguments on August 14, 2020, this Court dismissed Hicks' Motion for Compassionate Release without prejudice for failure to properly exhaust the administrative process with the Bureau of Prisons ("BOP"). While awaiting this Court's hearing, Hicks petitioned the Warden of FCI

Yazoo City Low ("Yazoo Low") for Compassionate Release; he did this on August 4, 2020. Hicks now renews his motion for Compassionate Release.

The Court **DENIES** Hicks' motion. [ECF No. 133].

## II.  BACKGROUND

Between November 1995 and February 1996, Hicks sold cocaine to informants three times. The Government charged him with distributing cocaine in a three-count indictment. The Court released Hicks on bond. During plea negotiations, the Government disclosed one informant's identity to Hicks' attorney. Later, Hicks saw the informant driving a car and ran towards him carrying a gun. Hicks shot several times and killed him. Three people witnessed the shooting. Hicks pled guilty to murder; a third superseding information charged him with "killing Daniel Duffie with intent to prevent [his] testimony…" In his Rule 11 agreement, Hicks agreed that the guideline for first degree murder, USSG § 2A1.1(a), applied to his conduct. [Ex. 4: Plea Agreement, 9]. In 1999, the Court sentenced Hicks to 35 years in prison. *United States v. Hicks*, 234 F.3d 1270, *1–2 (6th Cir. 2000). He was initially incarcerated at Yazoo City Medium in Mississippi and was subsequently transferred to Yazoo Low, a low security prison, due to his positive institutional conduct. [ECF No. 133, PageID.491]. His projected release date is October 18, 2026.

2

In this renewed motion for compassionate release, Hicks proposes returning home to live with a cousin and work at the Lear Corporation. The Government opposes Hicks' release.

## III.   DISCUSSION

The compassionate release statute allows the Court to modify a defendant's term of imprisonment if he fully exhausts all administrative remedies. 18 U.S.C. § 3582(c)(1)(A). The Sixth Circuit, in *United States v. Jones,* recently clarified the mechanics of compassionate review under 18 U.S.C. § 3582 where an incarcerated person files a motion on his own behalf in district court. 2020 WL 6817488, at *10 (6th Cir. Nov. 20, 2020).

First, district courts must find whether "extraordinary and compelling reasons warrant" a sentence reduction. *Id.* While the court must find whether a reduction is consistent with applicable policy statements issued by the Sentencing Commission, *Jones* concluded that the Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13 and that since the Commission has not updated it since the passage of the First Step Act in December 2018 courts need not consider it. *Id.* Instead, *Jones* held courts have "full discretion to determine whether an 'extraordinary and compelling' reason justifies compassionate release without consulting policy statement § 1B1.13". *Id.* at *7-9.

3

Finally, 18 U.S.C. § 3582(c)(1)(A) requires district courts to consider the factors set forth in 18 U.S.C. § 3553(a) and determine whether, in the court's discretion, the reduction authorized by the statute is "warranted in whole or in part under the particular circumstances of the case." *Id.* at *6 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)); *United States v. Roosevelt Kelly* No. 2:15-CR-00247, 2020 WL 7046960, at *3 (S.D. Ohio Dec. 1, 2020).

### A.   Hicks Exhausted Administrative Remedies

Exhaustion of administrative remedies is a "mandatory condition" before a defendant can file a motion for compassionate release. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020).

Hicks' counsel requested his compassionate release from the BOP on August 4, 2020. [ECF No. 133-2, PageID.499]. The BOP has allowed more than 30 days to lapse and failed to meet its obligations under 18 U.S.C. § 3582(c)(1)(A). Although Hicks filed this renewed motion before he properly exhausted administrative remedies, the Government concedes that Hicks exhausted his administrative remedies. [ECF No. 134, PageID.505]. The Court makes this finding as well.

4

**B.     Extraordinary and Compelling Reasons for Release**

The Court must first determine whether "extraordinary and compelling reasons" warrant release. 18 U.S.C. § 3582(c)(1)(A)(i).

Since Hicks relies on his health as his reason for release, the Court determines whether Hicks' health presents that extraordinary and compelling reason.

**1. Hicks' Medical Condition**

i.     <u>Hypertension</u>

Hicks says since he was diagnosed with hypertension, he struggles to maintain a healthy blood pressure. Hicks cites CDC data and recent studies which show that hypertension is a pre-existing condition which would increase Hicks' risk level for severe medical consequences if he contracted COVID-19.

The Government recognizes the CDC's findings that hypertension *might* place persons at an increased risk for severe illness from COVID-19 but says that Hicks' "essential hypertension," as opposed to "pulmonary hypertension," places him at a lower risk of exposure. Additionally, the Government notes that hypertension is a relatively common medical condition that affects roughly 46% of the U.S. population. Hypertension

alone, it says, is not an extraordinary and compelling reason to grant Hicks' compassionate release.

The CDC states that individuals with hypertension "might be at an increased risk for severe illness from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions. The CDC then lists heart conditions which unequivocally increase one's risk of serious illness from COVID-19. That list includes: Heart failure, Coronary Artery Disease, Cardiomyopathies and Pulmonary Hypertension." *At Higher Risk for Severe Illness*, Centers for Disease Control and Prevention (last visited December 29, 2020).

Pulmonary Hypertension is a type of high blood pressure that specifically affects the arteries in the lungs and the right side of the heart. https://www.mayoclinic.org/diseases-conditions/pulmonary-hypertension/symptoms-causes/syc-20350697. Essential hypertension, in contrast, is a "common condition" that constricts the arties throughout the body. https://www.mayoclinic.org/diseases-conditions/high-blood-pressure/symptoms-causes/syc-20373410.

Hicks' medical records reveal that he is diagnosed with "hypertension unspecified essential." [ECF No. 124, PageID.207]. Most recently, doctors prescribed 20 mg of Lisinopril daily, which was an increased dosage. The

6

medical report also notes that Hicks was non-compliant in taking the medication. *Id.* His most current blood pressure data shows that between 2/4/2020 and 4/30/2020 his blood pressure was as low as 130/82 and as high as 141/92. These readings indicate that Hicks vacillates between Stage 1 and Stage 2 Hypertension.

Several courts identify hypertension as an underlying medical condition which renders a prisoner at higher risk. *See United States of America v. Patino*, No. 18-cr-20451, 2020 WL 1676766, at *2 (E.D. Mich. Apr. 6, 2020) ("Mr. Patino is at high risk due to stage 3 chronic kidney disease and hypertension, and his age (63 years old)"); *United States v. Doshi*, No. 13-cr-20349, 2020 WL 1527186, at *1 (E.D. Mich. Mar. 31, 2020) (recommending that prisoner with hypertension and diabetes be placed in home confinement); *United States v. Rodriguez*, No. 03-00271, 451 F.Supp.3d 392 (E.D. Pa. Apr. 1, 2020) (granting compassionate release to inmate who served 17 years on a 20-year sentence, and had health issues including type 2 diabetes, essential hypertension, obesity, and liver abnormalities).

In most cases, however, courts find that hypertension, without additional aggravating pre-conditions, is largely insufficient to establish an extraordinary and compelling reason to grant compassionate release. *See*

7

*United States v. Sanders*, No. 19-cr-20288, 2020 WL 2320094, at *6 (E.D. Mich. May 11, 2020) (finding "hypertension alone does not demonstrate an extraordinary and compelling reason for release.") *See also United States v. Adams, No.* 2:18-CR-20641-TGB, 2020 WL 2733883, at *1 (E.D. Mich. May 26, 2020) ("hypertension alone—without other evidence indicating a low risk of flight or dangerousness—would be insufficient grounds to release a defendant from detention pending sentencing"). Indeed, most cases Hicks cites involve hypertension as an underlying condition named in combination with another CDC-recognized underlying medical condition which increases the risk of severe illness.

The Court finds that while Hicks' hypertension places him at a higher risk of serious illness, his essential hypertension alone does not constitute an extraordinary or compelling reason for compassionate release.

    ii.    <u>Exposure to Tuberculosis</u>

Hicks does say that his essential hypertension in combination with his previous exposure to Tuberculosis (TB) creates an increased risk of severe complications if he contracts COVID-19. Hicks was exposed to an infectious case of TB at Yazoo City Medium sometime between December 15, 2017 and October 15, 2018. [ECF No. 124, PageID.218]. Although he never tested positive for active TB, Hicks underwent prophylaxis Latent

8

Tuberculosis Infection Treatment (LTBI) which was completed on March 28, 2019. *Id.*

The Government says that Hicks was treated for latent TB, he successfully completed that treatment in 2019, and his medical records show no signs of an active TB process after his exposure. These factors, they add, distinguish Hicks' case from other cases where district courts found that TB was a compelling circumstance warranting compassionate release.

The Centers for Disease Control and Prevention (CDC) explains that there are substantial differences between active and latent TB. Unlike active TB which affects the lungs and is highly contagious, those infected with latent TB are not contagious and have no symptoms. *See* Centers for Disease Control and Prevention, "The Difference Between Latent TB Infection and TB Disease." And, people with latent TB can develop active TB if they do not receive treatment. *See* Centers for Disease Control and Prevention, "Treatment Regimens for Latent TB Infection (LTBI)." Further, Clinical Director Dr. Anthony Chambers opined that despite treatment, Hicks will "remain positive" when tested for latent TB due to the body's immune response to the TB bacterium. [ECF No. 146-2, PageID.756].

9

Though the medical community is quite familiar with TB, COVID-19's comorbidity with TB, latent or active, is far from understood. *See United States v. Ireland*, No. 17-20203, 2020 WL 4050245, at *2 (E.D. Mich. July 20, 2020); *See also United States v. Watkins*, No. 15-20333, 2020 WL 4016097, at *3 (E.D. Mich. July 16, 2020) ("like so many other questions about the effects and behavior of the novel coronavirus, its comorbidity with tuberculosis, latent or active, is far from understood."). Indeed, the CDC notes that its list of what constitutes an underlying medical condition which increases a person's risk is a "living document that will be periodically updated" and "could rapidly change as the science evolves." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (last accessed Dec. 7, 2020).

While district courts around the country have given different weight to latent TB as an underlying condition, many have found it an extraordinary and compelling justification for compassionate release, particularly when paired with other underlying conditions. *See, e.g.*, *United States v. Watkins*, No. 15-20333, 2020 WL 4016097, at *2–3 (E.D. Mich. July 16, 2020) (granting compassionate release to prisoner whose only underlying condition was previously-treated latent TB); *Singh v. Barr*, No. 20-CV-02346-VKD, 2020 WL 1929366, at *10 (N.D. Cal. Apr. 20, 2020) (granting

10

release from immigration custody for petitioner with latent TB, hypertension, and obesity); *United States v. Johnson*, No. CR H-96-176, 2020 WL 3618682, at *3 (S.D. Tex. July 2, 2020)(granting compassionate release to an inmate in his fifties with latent TB only).

Given the scientific community's uncertain and evolving understanding of the interplay between COVID-19 and other pulmonary illnesses, the Court finds that Hicks sufficiently demonstrates that his health conditions constitute extraordinary or compelling circumstances which warrant compassionate release.

**2. "Other Reasons"**

   i. COVID-19 Conditions at Yazoo

The heightened susceptibility of prison populations to the virus is an additional reason for the release of medically vulnerable inmates. *Miller v. United States*, No. 16-20222-1, 2020 WL 1814084, at *3 (E.D. Mich. Apr. 9, 2020).

Hicks says that COVID-19 presents unique challenges to control transmission among incarcerated persons. He also asserts that Yazoo Low woefully undertests its inmates and that if appropriately tested, the number of positive cases would be much higher.

11

In response, the Government says the BOP reacted quickly to confront COVID-19 within its facilities. It lists several measures the BOP took to stop the spread of the disease including restricting inmate movement within and between facilities, maximizing physical distancing and issuing facemasks for inmates to wear in pubic areas. Finally, they add that the BOP has granted home confinement to over 7,628 federal inmates in order to reduce the spread of COVID-19.

It is widely acknowledged that there is a greater risk of COVID-19 infection for incarcerated individuals. *See United States v. Greene*, No. CR 15-20709, 2020 WL 4581712, at *2 (E.D. Mich. Aug. 10, 2020). The rapid spread of the virus is particularly likely in facilities where inmates sleep in open-dormitory style rooms and share bathrooms and eating areas, as is the case at the Federal Bureau of Prisons' Yazoo City Low facility, where Hicks is incarcerated. *Id.*

In total, three Yazoo City Low inmates died after contracting COVID-19. *See* https://www.bop.gov/coronavirus/ (last visited Dec. 29, 2020). BOP records indicate that one inmate is currently positive, five staff members are positive and that 82 inmates have recovered from COVID-19. *Id.* However, at the time of filing only 242 of the 1,634 inmates were tested. Due to a chronic lack of testing, "even zero positive test results are not the

12

same as zero cases." *United States v. Watkins*, No. 15-20333, 2020 WL 4016097, at *2 (E.D. Mich. July 16, 2020). The Court acknowledges that the BOP implemented measures to attempt to contain the spread of the virus; nonetheless, Hicks presents evidence that his medical conditions put him at greater risk of COVID-19 and that he is unable to implement sufficient preventative measures at Yazoo Low.

### D. § 3553(a) Sentencing Factors Weigh against Granting Release

Although Hicks' medical conditions and rehabilitative efforts weigh in favor of release, the Court denies Hicks' motion because the applicable § 3553(a) factors militate strongly against it. *See Austin*, 2020 WL 2507622, at *1 (the court must find that the 18 U.S.C. § 3553(a) factors weigh in favor of release before granting such relief). Those factors are:

 (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines. *Id.*

Hicks pled guilty to murder. He correctly argues that the Court can consider post-offense developments which provide the most up-to-date picture. Since his incarceration began on October 10, 1996, Hicks has completed an array of vocational training courses and BOP courses ranging from financial literacy to anger management. His use of time while in custody, he says, demonstrates that Hicks has made significant efforts at rehabilitation. Hicks earned his GED on November 12, 1999. [Exhibit 4- Education and Rehabilitation Records]. He completed a total of 878 hours of educational and vocational training, including courses in, but not limited to: Anatomy, health courses, Keyboarding, financial courses, Commercial Driver's License, Anger Management, Ceramics, a course entitled "An Alternative to Violence," Political Science, Job Fair, a course entitled "Parents and Their Children," Welding, exercise courses, Real Estate, Book

14

Keeping and Electrical Systems. He participated in the "Release Preparation Program," – a program designed to prepare inmates to successfully re-enter the community and work force. Notably, he was transferred from Yazoo City Medium to Yazoo City Low due to his constructive institutional conduct and his BOP Pattern Score is low. These are laudable efforts at rehabilitation.

But the Government notes that Hicks has been disciplined for fighting in prison and violating prison rules in other ways. While in custody, Hicks has been subject to discipline for several offenses, ranging in seriousness, including, but not limited to:

- July 22, 2015 - Fighting Another Person;
- April 30, 2015 - Possessing an Unauthorized Item (paper towel to clean his cell);
- March 4, 2010 - Destruction of Property (Hicks admitted to breaking a window);
- August 3, 2007 - Fighting with Another Person;
- December 7, 2005 - Being Absent from Assignment;
- December 14, 2004 - Possessing an Unauthorized Item;
- December 5, 1998 - Refusing to Obey an Order;
- March 24, 1998 - Giving/Accepting Money;

- January 6 and 27, 1998 - Using the Phone and/or Mail without Authorization;

- November 17, 1997 – Fighting Another Person;

- September 24, 1997 – Fighting Another Person; and

- August 24, 1997 – Fighting Another Person.

This record while in prison, coupled with the nature and circumstances of Hicks' underlying crimes outweigh other considerations. While on bond for distributing cocaine, Hicks learned the identity of a government witness and killed him to prevent testimony at trial. Violent crimes of this manner weigh strongly against reduction of a sentence even when extraordinary and compelling medical justifications exist. *See e.g.*, *United States v. Shakur*, 2020 WL 6482875, F.Supp.3d (2020) (denying compassionate release to a petitioner currently incarcerated for 1st degree murder with extraordinary and compelling medical conditions because "3553(a) factors make it impossible for the Court to find that Shakur demonstrates extraordinary and compelling reasons"); *United States v. Araña*, No. 95-80272-13, 2020 U.S. Dist. LEXIS 80394, 2020 WL 2214232 (E.D. Mich. May 7, 2020) (denying release to a petitioner serving life sentence for drug offenses and murder who otherwise had a compelling medical justification for release).

16

There are relatively few reported cases of courts reducing the sentences of inmates convicted of murder. *But See United States v. Rodriguez*, --- F.Supp.3d ---- (2020) (reducing a life sentence to a 30yr sentence for an inmate convicted of murdering a government informant where the petitioner presented letters of support from 27 prison officials attesting to his extraordinary rehabilitation and expressly supporting his release). Even fewer have released inmates convicted of murder. Courts typically grant release when the petitioners are older and terminally ill. *See United States v. Tidwell*, No. CR 94-353, 2020 WL 4504448 (E.D. Pa. Aug. 5, 2020) (granting compassionate release to a 62 year old "model inmate" convicted of two murder charges who suffered from stage IV prostate cancer, hepatitis C, and hypertension, and had less than a year to live). Such dire circumstances are not presented here.

Hicks has served 79% of his sentence based on his expected release date. But Hicks received a substantially reduced sentence when the court sentenced him to 420 months; the maximum penalty for premeditated murder of a witness is life imprisonment without the possibility of parole. Shortening that sentence by six years, would undermine the seriousness of the offense.

The Court cannot find that Hicks' release is consistent with Congress' sentencing factors. While the risk of recidivation may be low, the cost of recidivation is high.

## IV.   CONCLUSION

Although Hicks demonstrated compelling medical conditions and significant efforts at rehabilitation, the Court **DENIES** his motion for compassionate release.

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  January 6, 2021